**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
                                    )
ZAIGANG LIU,                        )
                                    )
            Plaintiff,              )
                                    )  Civil Action No. 07-263 (EGS)
            v.                      )
                                    )
PAUL NOVAK, et al.,                 )
                                    )
            Defendants.             )
                                    )
```

**MEMORANDUM OPINION**

Plaintiff, Zaigang Liu, filed this suit seeking to compel the federal government defendants to adjudicate his application for adjustment of immigration status.  Plaintiff submitted his application for adjustment to obtain lawful permanent resident status on July 23, 2003, and his application has not yet been adjudicated.  Pending before the Court are defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim and plaintiff's motion for summary judgment.  Upon consideration of the motions and supporting memoranda, the responses and replies thereto, the applicable law, and the entire record, the Court determines that it has jurisdiction over plaintiff's claim under the Administrative Procedures Act ("APA") and that adjudication of plaintiff's application has been unreasonably delayed.  Therefore, for the reasons stated herein, plaintiff's motion for summary judgment is

1

**GRANTED**, and defendants' motion to dismiss the complaint is **DENIED**.

## BACKGROUND[1]

Plaintiff, Zaigang Liu, is a Chinese national lawfully residing in the United States.  On July 23, 2003, plaintiff filed an application for adjustment of status to lawful permanent resident as a derivative beneficiary of his spouse, Lu Zhang. Defendant Paul Novak is the District Director of the Vermont Service Center of the United States Department of Homeland Security.  Plaintiff's application was filed with defendant Novak's office and the office retains jurisdiction over the application.  Defendant Emilio Gonzalez is the Director of the United States Citizenship and Immigration Services ("USCIS"). The USCIS is assigned the adjudication of immigrant visa petitions as well as applications for permanent residence status. Defendant Robert S. Mueller, III, is the Director of the Federal Bureau of Investigation ("FBI").  The FBI is responsible for security clearance investigations with regard to status adjustment applications.

Plaintiff is eligible for an adjustment of status as a derivative beneficiary of an approved Immigrant Petition for Alien Worker and Application for Adjustment of Status to lawful

---

[1] Defendants did not contest plaintiff's statement of material facts in support of his motion, and therefore the Court will accept the facts as undisputed.  *See* LCvR 56.1.

2

permanent resident filed by his spouse.  Plaintiff's spouse's
application for adjustment was approved by the USCIS on November
23, 2004.  Plaintiff has complied with all requests made by the
USCIS in order to complete all necessary biometric appointments
for security clearances.  In addition, plaintiff has provided all
information requested by the agency and has complied with all
appointment notices.  Nonetheless, on May 21, 2006, plaintiff was
informed that his application's adjudication was delayed because
of the absence of the required security background checks.  This
security background check includes an FBI name check.  Defendants
contend that FBI name checks are detailed processes, and although
the vast majority clear quickly, FBI name checks can remain
pending for long periods of time.

    More than three years after plaintiff filed his application
for adjustment, plaintiff had still not received any decision.
Accordingly, on February 5, 2007, plaintiff filed a complaint in
this Court asserting both mandamus jurisdiction and federal
question jurisdiction in combination with the APA.  Plaintiff
seeks to compel defendants to adjudicate his application for
adjustment, though he does not ask the Court to compel a status
adjustment favorable to him.

    In response to plaintiff's complaint, defendants filed a
motion to dismiss for lack of subject matter jurisdiction and
failure to state a claim.  With regard to jurisdiction,

defendants assert that: (1) this Court lacks jurisdiction over plaintiff's claim under two provisions of the immigration law; (2) mandamus is inappropriate because defendants do not owe plaintiffs a non-discretionary duty; and (3) federal question jurisdiction under the APA is inappropriate because adjustment of status is discretionary and thus unreviewable by courts.  With regard to the merits, defendants assert that although plaintiff requests immediate adjudication of his application, there is no statutory basis warranting such relief.

Plaintiff filed a motion for summary judgment in addition to an opposition to defendants' motion to dismiss.  Plaintiff asserts that: (1) this Court has jurisdiction under the APA or through mandamus; and (2) pursuant to the APA, not only has plaintiff stated a valid claim, but plaintiff is entitled to judgment as a matter of law because defendants failed to adjudicate his application within a reasonable time.  Defendants filed a reply that addressed the jurisdictional issues, but failed to address plaintiff's argument that adjudication of the application has been unreasonably delayed.

### STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests whether the court has subject matter jurisdiction over the action.  *Bernard v. U.S. Dep't Of Def.*, 362 F. Supp. 2d 272, 277 (D.D.C. 2005).  The plaintiff bears the

burden of establishing that the court has subject matter
jurisdiction. *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C.
2001).  In evaluating a motion to dismiss for lack of subject-
matter jurisdiction, the court must accept the complaint's well-
pled factual allegations as true and construe all reasonable
inferences in the plaintiff's favor. *Thompson v. The Capitol
Police Bd.*, 120 F. Supp. 2d 78, 81 (D.D.C. 2000).  "The court is
not required, however, to accept inferences unsupported by the
facts alleged or legal conclusions that are cast as factual
allegations." *Rann*, 154 F. Supp. 2d at 64 (citations omitted).
In determining whether the plaintiff has met his burden, the
Court may look to materials beyond the pleadings. *Bernard*, 362
F. Supp. 2d at 277 (citing *Herbert v. Nat'l Acad. of Scis.*, 974
F.2d 192, 197 (D.C. Cir. 1992)).

A motion to dismiss under Rule 12(b)(6) tests the legal
sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235,
242 (D.C. Cir. 2002).  A complaint must present "enough facts to
state a claim to relief that is plausible on its face," and
"above the speculative level." *Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955, 1965, 1974 (2007).  The Court will accept as
true all factual allegations in the complaint, and give the
plaintiff the benefit of all inferences that can be drawn from
the facts alleged. *See id.* at 1965; *Atchinson v. Dist. of
Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996).

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

**ANALYSIS**

## I. Jurisdiction

Defendants contend that this Court has been stripped of jurisdiction over plaintiff's claim by two provisions, 8 U.S.C. § 1252(a)(2)(B)(ii) and 8 U.S.C. § 1252(g). In the alternative, defendants contend that the Court does not have jurisdiction over plaintiff's APA claim because it concerns matters committed to agency discretion and does not have jurisdiction over plaintiff's mandamus claim because defendants do not owe plaintiff a clear, non-discretionary duty.

6

### A. 8 U.S.C. § 1252(a)(2)(B)(ii)

Section 242 of the Immigration and Nationality Act, as amended by the REAL ID Act of 2005, states:

> [n]otwithstanding any other provision of law (statutory or nonstatutory), . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . .
>
> (ii) any . . . *decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be *in the discretion* of the Attorney General or the Secretary of Homeland Security.

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).  Pursuant to 8 U.S.C. § 1255, an alien's status "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence."  8 U.S.C. § 1255(a).  Although it is clear that the decision to grant or deny an adjustment application is "wholly discretionary," *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 389 (S.D.N.Y. 2004), and therefore barred from judicial review, it is a disputed question among courts as to whether section 1252(a)(2)(B)(ii) also bars a court from reviewing the failure to make or delay in making an adjustment decision.

Several district courts have dismissed claims similar to plaintiff's for lack of subject matter jurisdiction, holding that § 1252(a)(2)(B)(ii) bars judicial review of the overall process leading up to and including the grant or denial of an adjustment

application.  For example, in *Safadi v. Howard*, 466 F. Supp. 2d
696 (E.D. Va. 2006), after waiting more than three years for a
decision on his adjustment application, the plaintiff filed a
mandamus action requesting that the court compel USCIS to
adjudicate his application.  *Id.* at 697.  The court, however,
held that it did not have jurisdiction to review the plaintiff's
complaint pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii).  *Id.*  The
court stated that § 1252(a)(2)(B)(ii) clearly and unambiguously
precluded courts from "reviewing any discretionary decision or
action of USCIS."  *Id.* at 698.  Accordingly, as the court noted,
"[t]he question . . . is whether subsection (ii)'s exclusion of
any discretionary 'action' from judicial review serves to
preclude judicial review of the pace or nature of the process
USCIS has implemented to execute its discretionary authority to
adjust plaintiff's status."  *Id.*  The court reasoned that "[t]he
plain meaning of the word 'action' answers this question; it
means 'an act of series of acts.'"  *Id.* at 699 (citing Black's
Law Dictionary 28 (6th ed. 1990)).  Under § 1252(a)(2)(B)(ii)
then, the term "action" "encompasses the entire process of
reviewing an adjustment application, including the completion of
background and security checks and the pace at which the process
proceeds."  *Id.* at 699.  Thus, the court rejected the plaintiff's
argument that the phrase "decision or action" only applied to the

actual results of adjudications, and dismissed plaintiff's complaint for lack of jurisdiction. *Id.* at 699-701.

Other district courts have similarly held that they lacked jurisdiction to hear claims similar to plaintiff's because § 1252(a)(2)(B)(ii) includes delays in the adjustment process. *See, e.g.*, *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1353-54 (S.D. Fla. 2007) (holding that *Safadi*'s reasoning applied to the plaintiff's case and dismissal for lack of jurisdiction was proper); *Zheng v. Reno*, 166 F. Supp. 2d 875, 880 (S.D.N.Y. 2001) (reasoning that the adjustment process is "wholly discretionary," and therefore that plaintiff's mandamus complaint must be dismissed as relief is "unavailable for delays in the adjustment process"); *Mustafa v. Pasquerell*, 2006 WL 488399, at *5 (W.D. Tex. 2006) (holding mandamus complaint seeking adjudication of adjustment application must be dismissed for lack of subject matter jurisdiction).

On the other hand, there is also significant district court authority holding that § 1252(a)(B)(2)(ii) does not bar judicial review of the pace of application processing or the failure to take action. For example, in *Duan v. Zamberry*, No. 06-1351, 2007 WL 626116 (W.D. Pa. Feb. 23, 2007), the court first explained that 8 U.S.C. § 1252(a)(2)(B)(ii) "is to be read narrowly." *Id.* at *2 (citing *Prado v. Reno*, 198 F.3d 286, 290 (1st Cir. 1999)). The court then noted that "as a general matter, there is a

9

'strong presumption in favor of judicial review of administrative action.'" *Id.* (quoting *INS v. St. Cyr*, 533 U.S. 289, 298 (2001)).  Under these guiding principles, the court held that § 1252(a)(2)(B)(ii) did not strip it of jurisdiction because "[t]he subchapter at issue [referred to in § 1252(a)(2)(B)(ii)] specifies only that it is within the discretion of the Attorney General to adjust one's status; it does not address, much less specify any discretion associated with, the pace of application processing." *Id.*  Accordingly, § 1252(a)(2)(B)(ii) is limited to results of adjudications and does not include "the pace of application processing." *Id.*  In addition, the court specifically referenced the *Safadi* decision and found that its logic with regard to § 1252(a)(2)(B)(ii) would "render toothless all timing restraints, including those imposed by the APA . . . [and s]uch a result would amount to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters." *Id.* at *3.

Other district courts have followed a similar line of reasoning as *Duan*, holding that they were not divested of jurisdiction by § 1252(a)(2)(B)(ii).  *See, e.g., Batista v. INS*, 2000 WL 204535, at *2 (S.D.N.Y. Feb. 22, 2000) (holding that § 1252(a)(2)(B)(ii) did not apply because the plaintiff's complaint "does not concern . . . a decision or action, but rather the Attorney General's failure to make a decision or to take an

10

action at a pace acceptable to plaintiffs"); *see also Elmalky v. Upchurch*, 2007 WL 944330, at *5 (N.D. Tex. Mar. 28, 2007) (reasoning that § 1255(a) does not specifically commit the "process" of adjusting an application to the Attorney General and holding that § 1252(a)(2)(B)(ii) does not strip the court of jurisdiction); *Kim*, 340 F. Supp. 2d at 389 (reasoning that although the decision to grant or deny an adjustment application is "wholly discretionary," "[w]hether to adjudicate an adjustment application is not discretionary, but governed by section 6 of the APA").

Having considered the arguments on both sides of the issue, the Court is persuaded for three reasons that § 1252(a)(2)(B)(ii) is not a bar to jurisdiction over plaintiff's claim. First, the provision only applies to jurisdiction to review a "decision or action" of the Department of Homeland Security. In this case, plaintiff is challenging the absence of a decision or action, specifically the failure to adjudicate his application. Review over the lack of action is not barred. *See Nyaga v. Ashcroft*, 186 F. Supp. 2d 1244, 1252 (N.D. Ga. 2002) ("Plaintiff is not seeking a review of a decision or action, which would be barred, but is seeking remediation of the lack of action, which is not barred.") *rev'd on other grounds by* 323 F.3d 906 (11th Cir. 2003); *Paunescu v. INS*, 76 F. Supp. 2d 896, 900 (N.D. Ill. 1999) ("Plaintiffs do not ask this court to 'review' a governmental

action, but to examine and rectify a gross inaction."). As the Seventh Circuit has indicated, by the use of the terms "decision or action," § 1252(a)(2)(B)(ii) only bars review of actual discretionary decisions, not the failure to render a decision. *See Iddir v. INS*, 301 F.3d 492, 497-98 (7th Cir. 2002) (citing *Nyaga* and *Paunescu* with approval).

The Court is not persuaded by the "plain meaning" argument in *Safada*, clever though it may be. The court in *Safada* artfully made the argument that the inaction at issue here is in fact a series of unspecified, affirmative, discretionary actions. 466 F. Supp. 2d at 699. Plaintiff, however, is not challenging any of those discrete actions, and the government has not even specified what steps it has taken in processing plaintiff's particular application.[2] Moreover, the argument in *Safada* essentially finds that inaction is within the "plain meaning" of action. The established body of administrative law though, distinguishes between by the two. *See Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987) ("inaction represents action that has been unlawfully withheld"). For instance, the APA relies on this distinction in 5 U.S.C. § 706, as subsection (1) remedies unlawful agency inaction and subsection (2) remedies unlawful

---

[2] For instance, 8 C.F.R. § 103.2(b)(18) allows agency officials to make specific findings to support extensions of time to complete the necessary investigation. Defendants, however, have not relied upon this provision nor stated that any such findings were ever made.

12

agency action.  As action and inaction are distinct, and §
1252(a)(2)(B)(ii) by its plain terms only covers the former, the
provision does not apply to plaintiff's claim.

Second, § 1252(a)(2)(B)(ii) does not apply to all
discretionary decisions, but only those decisions "the authority
for which is specified under this subchapter to be in the
discretion of the Attorney General or the Secretary of Homeland
Security."  Therefore, the provision only applies to the
"narrower category of decisions where Congress has taken the
additional step to specify that the sole authority for the action
is in the Attorney General's discretion." *Alaka v. Attorney Gen.
of U.S.*, 456 F.3d 88, 95 (3d Cir. 2006); *see Spencer Enters.,
Inc. v. United States*, 345 F.3d 683, 690 (9th Cir. 2003) (holding
that the provision only bars review of "matters of pure
discretion, rather than discretion guided by legal standards");
*see also Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005)
(declining to decide how discretionary a decision must be to be
barred from review).  Within the subchapter referred to, Congress
specified that the ultimate decision of whether an immigrant's
status is "adjusted" lies with the "Attorney General, in his
discretion."  8 U.S.C. § 1255(a).  The subchapter, however, "does
not address, much less specify any discretion associated with,
the pace of application processing." *Duan*, 2007 WL 626116, at

*2. Thus, plaintiff's claim is not barred by § 1252(a)(2)(B)(ii) for this reason as well.

Finally, recognizing that reasonable jurists may differ in resolving these questions of statutory interpretation, the Court relies on the applicable presumptions, all of which are in favor of finding jurisdiction over plaintiff's claim. First, Congress's intent to limit federal jurisdiction must be "clear and convincing" in order to preclude judicial review. *See Bd. of Governors of the Fed. Reserve Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 44 (1991). Second, there is a general presumption in favor of judicial review of administrative acts. *See INS v. St. Cyr*, 533 U.S. 289, 298 (2001). Third, there is the principle that statutory ambiguities in immigration laws are resolved in favor of immigrants. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987). In light of all three principles, the Court concludes that § 1252(a)(2)(B)(ii) does not eliminate this Court's jurisdiction over plaintiff's claim.

**B. 1252(g)**

Defendants contend this provision bars jurisdiction over plaintiff's claim because Congress intended to prevent any interference with the prioritizing and adjudication of any immigration case. Defendants' contention, however, ignores the statute's language and Supreme Court precedent.

14

The provision states, in relevant part, "no court shall have jurisdiction to hear any cause of claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  The Supreme Court in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), held that § 1252(g) applies narrowly to the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders."  *Id.* at 482.  The Court stated that "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."  *Id.*  Thus, it is even less plausible that the mention of these discrete deportation-related events was a shorthand way of referring to all claims brought in immigration matters.  *See Paunescu v. INS*, 76 F. Supp. 2d 896, 899 (N.D. Ill. 1999).  Because this case does not involve any of the explicitly mentioned steps in the deportation process, or any aspect of the deportation process at all, § 1252(g) does not apply to plaintiff's claim.  *See Reno*, 525 U.S. at 482; *Paunescu*, 76 F. Supp. 2d at 899.

## C. 28 U.S.C. § 1331 and the APA

Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate

remedy in a court are subject to judicial review." 5 U.S.C. § 704. An agency has a duty to conclude a matter presented to it within a "reasonable time." *Id.* § 555(b). Accordingly, the scope of judicial review includes "compel[ling] agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1); *see also Brock v. Pierce County*, 476 U.S. 253, 260 n.7 (1986) (noting that the APA gives district courts the authority to "compel agency action unlawfully withheld or unreasonably delayed") (citing 5 U.S.C. § 706(1)).

The APA does not independently provide a basis for the existence of subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107 (1977). Pursuant to 28 U.S.C. § 1331 though, a federal district court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Accordingly, 28 U.S.C. § 1331 in combination with the APA, vests the court with jurisdiction to compel agency action that is unreasonably delayed or withheld. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099-1100 (D.C. Cir. 2003) ("the district court had jurisdiction under 28 U.S.C. § 1331 . . . to determine whether the [agency] was in violation of § 555(b), and, if it was, to issue an appropriate order pursuant to § 706.").

The APA, however, precludes judicial review to the extent "agency action is committed to agency discretion by law." 5

U.S.C. § 701(a)(2).  Defendants contend that because adjustment
of status decisions are committed to the discretion of the
Attorney General, *see* 8 U.S.C. 1255(a), plaintiff's unreasonable
delay claim cannot be brought under the APA.  Defendants rely
upon *Heckler v. Chaney*, 470 U.S. 821 (1985), where the Supreme
Court construed § 701(a)(2) to create a presumption against
reviewability for "an agency's decision not to take enforcement
action."  *Id.* at 832.  The Court stated that "review is not to be
had if the statute is drawn so that a court would have no
meaningful standard against which to judge the agency's exercise
of discretion."  *Id.* at 830.  Chaney has thus been "interpreted
to create a presumption against the review of agency inaction."
*Alliance To Save The Mattaponi v. U.S. Army Corps of Eng'rs*, No.
06-1268, 2007 WL 1576317, at *5 (D.D.C. 2007).

The D.C. Circuit, however, allows review of agency inaction
for certain types of claims.  *See id.*  One type are claims that
allege that "the pace of the agency decisional process lags
unreasonably."  *Sierra Club v. Thomas*, 828 F.2d 783, 794 (D.C.
Cir. 1987).  In such cases, "the statutory duty involved . . .
does not specify what course of action shall be taken.  Rather,
regardless of what course it chooses, the agency is under a duty
not to delay unreasonably in making that choice."  *Id.*  Agencies
most often bear this duty of timeliness as a result of the APA's
broad prohibition against "unreasonable delay."  *Id.* (citing 5

17

U.S.C. §§ 555(b), 706(1)).  In addition, as discussed in Section II, *infra*, the D.C. Circuit has established a meaningful standard by which to judge agency inaction in cases such as this one.  *See Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984).  Therefore, the Court does have jurisdiction over plaintiff's APA claim that defendants have unreasonably delayed adjudicating his application.  *See Thomas*, 828 F.2d at 794; *Nat'l Wildlife Fed'n v. Browner*, 127 F.3d 1126, 1131 (D.C. Cir. 1997) (stating that plaintiff could challenge the EPA's unreasonable delay in making a discretionary decision under the APA).[3]

## II. Merits of the APA Claim

On the merits, defendants move to dismiss plaintiff's APA claim for failure to state a claim.  Defendants summarily argue that plaintiff's factual allegations do not demonstrate an unreasonable delay, though they have not provided any specific explanations for why the delay for plaintiff to date has been reasonable.  Plaintiff contends that he has stated a valid APA claim, and that on the undisputed facts, the Court should find the defendants' delay unreasonable and grant his motion for summary judgment.

---

[3] Because the Court finds that the APA provides a possible remedy for plaintiff, the Court need not reach the question of whether mandamus is available.  *See Action Alliance of Senior Citizens v. Leavitt*, 483 F.3d 852, 858 (D.C. Cir. 2007) (stating the standard rule is that the existence of an alternative remedy precludes mandamus).

The D.C. Circuit in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) identified six factors ("TRAC" factors) relevant to determining whether agency delay is unreasonable:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Id.* at 80 (citations omitted).  With regard to the first TRAC factor, plaintiff's application has been pending for over four years, which plaintiff argues exceeds the rule of reason.[4] Defendants' explanation for the delay is that the FBI name check has not been completed for plaintiff.  The factual background provided by defendants with their motion generally describes the name check process, but fails to explain what the average or expected processing times are, or why plaintiff's particular name check has not been processed.  Defendants had an opportunity to submit additional information or argument in their opposition to

---

[4] Congress has not provided a timetable for this action, so the second TRAC factor is inapplicable.

plaintiff's motion, but failed to do so.  As defendants have
described the name check process as one where data is primarily
retrieved from an electronic database, and only occasionally from
paper records, it does not seem reasonable to the Court that this
process would take over four years to complete.

In the absence of more detailed information from the agency
to explain the delay in plaintiff's name check, the Court will
look to other unreasonable-delay cases involving adjustment
applications.  Federal courts have held that delays as long as
four years are unreasonable for immigrant status adjustment
applications.  *See, e.g.*, *Singh v. Still*, 470 F. Supp. 2d 1064,
1071 (N.D. Cal. 2007) (holding four-year delay was not
reasonable); *Haidari v. Frazier*, No. 06-3215, 2006 WL 3544922, at
*6 (D. Minn. Dec. 8, 2006) (holding four-year delay was not
reasonable due to FBI name checks); *Yu v. Brown*, 36 F. Supp. 2d
922, 935 (D.N.M. 1999) (holding two-and-a-half-year delay was not
reasonable).  Defendants also have not alleged that plaintiff's
actions have in any way delayed the processing of his
application.  *See Singh*, 470 F. Supp. 2d at 1068 (considering
extent to which delay was attributable to plaintiff).  Thus, the
first TRAC factor weighs in favor of finding the delay to
plaintiff unreasonable.

With regard to the third and fifth TRAC factors, plaintiff
asserts that he is being denied the benefits of permanent

resident status.  The "inability to obtain permanent resident status affects a wide range of important rights." *Id.* at 1070. For example, the delay prejudices plaintiff's ability to petition to immigrate close family members and adversely impacts his ability to seek United States citizenship.  *See id.*  Thus, these factors weigh in favor of finding the delay unreasonable.

With regard to the fourth TRAC factor, defendants have not provided any information that would allow the Court to find this factor in their favor.  Plaintiff asserts that there is no active investigation of him and defendants have failed to dispute this assertion with any specificity.  Defendants have described the name check system as being prioritized in order of application date, so requiring the processing of plaintiff's application may increase the delay for others.  *See Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 116 (D.D.C. 2005).  Defendants, however, have failed to submit any information regarding the extent of this potential impact on the processing of other applications.

Based on the nature of the security check process, the findings of other courts, and the prejudice to plaintiff, the Court concludes that the present four-year delay in adjudicating plaintiff's application is unreasonable.  Though they had ample opportunity, defendants have failed to provide information that would allow the Court to find plaintiff's interests outweighed by the impact of a remedy on other agency activities.  Accordingly,

the Court will require defendants to complete the adjudication of plaintiff's application by no later than November 30, 2007. *See* 5 U.S.C. § 706(1); *Singh*, 470 F. Supp. 2d at 1072.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **GRANTED** and defendants' motion to dismiss the complaint is **DENIED**.  Defendants are directed to complete the adjudication of plaintiff's application for adjustment of status by no later than November 30, 2007.  An appropriate Order accompanies this Memorandum Opinion.

Signed:     **Emmet G. Sullivan**
            **United States District Judge**
            **August 30, 2007**

22